# <u>19-02963 (PGG)</u>

**In the**
**United States District Court**
**For the Southern District of New York**

_____

In re BCBG MAX AZRIA GLOBAL HOLDINGS, LLC, et al,

*Debtor.*

_____

NYAM, LLC,

*Appellant,*

v.

DAVID MACGREEVEY, in his capacity as PLAN ADMINISTRATOR,

*Appellee.*

_____

On Appeal from the United States Bankruptcy Court
for the Southern District of New York

---

## BRIEF FOR APPELLANT

---

Michael D. Hamersky, Esq.
Scott A. Griffin, Esq.
Richard K. Milin, Esq.
GRIFFIN HAMERSKY, LLP
420 Lexington Avenue, Suite 400
New York, NY 10170
Telephone: (646) 998-5580
rmilin@grifflegal.com
mhamersky@grifflegal.com

*Counsel to Appellant, NYAM, LLC*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

There is no parent corporation or publicly held corporation that owns 10% or more of Appellant's stock.

## STATEMENT CONCERNING ORAL ARGUMENT

Appellant respectfully requests oral argument in the belief that it will assist the Court.  Although Appellant does not believe that its arguments are unusually complex, Appellant's factoring agreements can be difficult to interpret. Accordingly, to the extent that the Court determines that it is required to interpret those agreements, oral argument may assist the Court.

eg

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................vi

PRELIMINARY STATEMENT...........................................................1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ...2

STATEMENT OF THE ISSUES PRESENTED ....................................2

STANDARD OF APPELLATE REVIEW .............................................3

STATEMENT OF THE CASE ............................................................3

    1.  Appellant's Factoring Agreement with Hana ..........................3

    2.  Appellant's and Hana's Course of Dealing..............................7

    3.  Mr. Fleming's Deposition Testimony ....................................8

    4.  The Parties' Mutually Offsetting Debts .................................10

    5.  The Bankruptcy Court's Ruling ...........................................10

SUMMARY OF ARGUMENT ............................................................12

ARGUMENT ...................................................................................14

APPELLANT SHOULD BE BE GRANTED A SUMMARY
JUDGMENT REVERSING THE COURT BELOW, AND DISMISSING
THIS PROCEEDING, BECAUSE APPELLANT IS ENTITLED TO SET
OFF ITS BCBG INVOICES AGAINST ITS DEBT TO BCBG...........................14

    POINT I.  The Plain Words of Appellant's Factoring Agreements Did Not
        Effectuate an Assignment of Appellant's BCBG Invoices to Its Factor
        Hana ............................................................................15

    POINT II.  Appellant's and Hana's Declarations Entitle Appellant
        to a Summary Judgment that Appellant Owns the BCBG Invoices
        at Issue .........................................................................17

**Page**

POINT III.  The Bankruptcy Court Should Not Have Disregarded the
    Declarations of Appellant and Hana, which This Court Can and
    Should Properly Rely On ................................................................. 19

POINT IV.  Even If the Unambiguous Words of the Factoring
    Agreements Had Effectuated an Assignment – and They Did Not –
    The Contracting Parties Were Free to Modify Their Agreement and
    Conduct Their Business as They Chose ........................................... 24

POINT V.  Hana Does Not Own the $1.7 Million in Invoices at Issue
    Here Because Hana Gave Appellant No Consideration for Them .... 28

CONCLUSION ....................................................................................... 30

# **TABLE OF AUTHORITIES**

**Page**

**Cases:**

*Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006) ..........................................27

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*,
  2013 WL 2351814 (S.D. Cal. May 24, 2013) ...............................................25

*Amalgamated Transit Union v. Superior Court*, 46 Cal.4th 993 (2009) ............28

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).....................................14

*Barclays Capital Inc. v. Giddens (In re Lehman Brothers Inc.)*,
  478 B.R. 570 (S.D.N.Y. 2012)...........................................................................3

*Binder & Binder PC v. Barnhart*, 481 F.3d 141 (2d Cir. 2007) ........................15

*Britz Fertilizers, Inc. v. Bayer Corp.*,
  665 F. Supp. 2d 1142 (E.D. Cal. 2009) ................................................... 18-19

*Capital Records, LLC v. ReDIGI, Inc.*,
  934 F. Supp.2d 640 (S.D.N.Y. 2013) ...............................................................14

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) ........ 22

*Embassy Realty Assoc. v. Southwest Prods. Co.*,
  126 Cal.App.2d 725 (Cal. App.2d 1954).........................................................28

*Fine v. Bradshaw*, 138 Cal. App.2d 863 (3d Dist. 1956) ..................................17

*Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001) ...........25

*G.P.P., Inc. v. Guardian Protection Prods.*, 2017 WL 1881385 (E.D. Cal.) ....25

*Harrison v. Adams*, 20 Cal.2d 646 (1942)....................................................19, 29

*In re Baumblit*, 251 B.R. 442 (E.D.N.Y. 2000) ..................................................3

**Page**

*In re Calpine*, 406 B.R. 463 (S.D.N.Y. 2009) ..................................... 25

*In re Old Carco LLC*, 551 B.R. 124 (2016) ...................................... 27

*In re U.S. Express*, 255 F.Supp. 584 (N.D. Ca. 1966) ................................. 16-17

*In re World Trade Ctr. Disaster Site Litig.*, 758 F.3d 202 (2d Cir. 2014) ..... 3, 22

*James v. Zurich-Am. Ins. Co. of Ill.*, 203 F.3d 250 (3d Cir. 2000) ................... 27

*Kanno v. Marwit Capital Partners II*, 18 Cal.App.5th 987 (2017) ................. 19

*Matanuska Valley Farmers Coop Ass'n v. Monaghan*,
   188 F.2d 906 (9th Cir. 1951) ........................................................ 25

*Moll v. Telesector Resources Group*, 760 F.3d 198 (2d Cir. 2014) ................. 21

*National R. Co. v. Metropolitan T. Co.,* 17 Cal.2d 827 (1941) ........................ 29

*Straube v. Fla. Union Free Sch. Dist.*, 801 F.Supp. 1164 (S.D.N.Y. 1992) ...... 15

*Swift Harvest USA, LLC v. Dollar General Corp.*,
   2018 WL 7348845 (C.D. Ca. 2018) ............................................... 28

*Tri-Star Electronics Intern. v. Preci-Dip Durtal*,
   619 F.3d 1364 (Fed. Cir. 2010) ..................................................... 27

**Statutes and Rules:**

11 U.S.C. § 553 .................................................................... 19

28 U.S.C. § 157(b) ................................................................ 2

28 U.S.C. § 158(a) ................................................................ 2

28 U.S.C. § 1334 .................................................................. 2

Cal. Code Civ. P. 1856 ..................................................... 19-20, 24

**Page**

Fed. R. Civ. P. § 56(a) ..................................................................... 14

Fed. R. Bankr. P. § 8002(a)(1) ........................................................... 2

**Other Authorities:**

American Heritage Dictionary ............................................................ 16

Merriam-Webster Dictionary .............................................................. 16

2 Farnsworth on Contracts (3d) § 7.9 ........................................... 26-27

Restatement (Second) of the Law of Contracts § 201(1) .................... 26

Restatement (Second) of the Law of Contracts § 332 ....................... 29

## PRELIMINARY STATEMENT

Appellant NYAM, LLC respectfully submits this Brief in support of its appeal from the order (the "**Order**") of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") dated March 13, 2019 which granted Appellee MacGreevey, Plan Administrator for Chapter 11 debtor BCBG, a summary judgment for $675,000, dismissed Appellant's defense that it is entitled to set off $1.7 million in invoices that BCBG owes to Appellant (the "**BCBG Invoices**" or the "**Invoices**") against Appellant's $675,000 debt to BCBG, and denied Appellant's cross-motion for summary judgment on its setoff defense.

The Order should be reversed. The Bankruptcy Court substituted its own view of how Appellant's factoring agreements worked for the view of **both** contracting parties, refusing to consider the Declarations of Appellant and its factor Hana (the "**Declarations**"), Docket Entry ("**D.E.**") 30, Exhs. A, B) or to conduct a trial. The Court ruled that Appellant's factoring agreements assigned $1.7 million in BCBG Invoices to Hana – though Appellant received no consideration for doing so – and that Appellant could not set off the Invoices against its debt to BCBG because it no longer owned them. The Court held that the factoring agreements definitively established that Hana, rather than Appellant, owns the BCBG Invoices, making a trial unnecessary, even though Appellant and Hana both state otherwise.

1

This is not the textbook case in which the parties to a contract disagree as to its interpretation. In that circumstance, the written contract establishes the parties' "manifest intent" and is normally controlling absent an ambiguity. Here, in contrast, the contracting parties *agree* as to how their contracts should be interpreted, and how they worked in practice, yet the Court rejected *both* contracting parties' view and adopted a different view based solely on the contracts' words. Further, even if Appellant *had* assigned $1.7 million in BCBG Invoices to Hana, as the Court held, the assignment would be void because Appellant received no consideration in exchange.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Bankruptcy Court had jurisdiction to hear this case under 28 U.S.C. §§ 157(b) and 1334 because this is a core proceeding. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). This appeal is from the final Order, entered on March 13, 2019, which dismissed Appellant's setoff defense and awarded Appellee $675,000. [D.E. 37.] On March 26, 2019, Appellant filed a timely Notice of Appeal pursuant to Fed. R. Bankr. P. 8002(a)(1). [D.E. 41.]

## STATEMENT OF THE ISSUES PRESENTED

1. Did the Bankruptcy Court err by granting a summary judgment that Appellant's factoring agreements assigned $1.7 million in BCBG Invoices to its factor Hana even though Hana rejected the Invoices for factoring, did not purchase them, and provided no consideration for them?  The standard of review is *de novo*.

2. Did the Bankruptcy Court err by refusing to consider the Declarations of Appellant and its factor concerning their understanding of and conduct under Appellant's factoring agreements – even though they were the only parties to those agreements – and relying on the Court's own interpretation instead? The standard of review is *de novo*.

3. Did the Bankruptcy Court err by granting summary judgment to Appellee rather than Appellant even though the undisputed facts show, and Appellant and its factor agree, that Appellant owns the BCBG Invoices at issue? The standard of review is *de novo*.

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's grant of summary judgment,  including its interpretation of Appellant's agreements and application of the "sham issue of fact" doctrine, are reviewed *de novo*.  *See Barclays Capital Inc. v. Giddens (In re Lehman Brothers Inc.)*, 478 B.R. 570, 582 (S.D.N.Y. 2012); *In re World Trade Ctr. Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014); *In re Baumblit*, 251 B.R. 442, 443 (E.D.N.Y. 2000).

## STATEMENT OF THE CASE

1. Appellant's Factoring Agreement with Hana

Appellant and Hana entered into their Factoring Agreement to finance Appellant's business with BCBG in September 2015. (*See* Factoring Agreement ("**FA**"), D.E. 27, Exh. B.) Under the Factoring Agreement, Hana gave Appellant advances

on BCBG Invoices. Upon collection of the Invoices, Hana charged interest and fees like a bank and paid the balance, net of Hana's advance, to Appellant. (*See* FA §§ 1.1-2.2.)

The Factoring Agreement stated that Appellant "agrees to sell, assign and transfer to Hana … all of [Appellant's] Accounts, with full power to Hana to collect and otherwise deal with such Accounts as the sole and exclusive owner thereof." (FA § 1.1.)  "Accounts" included invoices.  (*Id.* § 13.)

The Factoring Agreement also stated that "Hana hereby agrees to purchase, all of Client's Accounts."  (FA § 1.1.)  However, Hana had broad discretion to refuse to advance Appellant money based on BCBG Invoices. Hana was permitted, in its "sole credit judgment, to establish credit lines" and give "credit approvals" through its "E-Factoring System." (*Id.* § 1.2(a).) If and only if Hana gave credit approval, an invoice became an "Approved Account," provided that specified conditions were met, in which case Hana agreed to advance "up to" 85% of their value.  (*Id.* §§ 1.2(a), 13.)  However, Hana could withdraw its credit approval "at any time" and could not be held liable to Appellant for "refusal to credit approve an Account." (*Id.* § 1.2(c).) Consequently, although Hana agreed to "purchase" all of Appellant's BCBG Invoices, it did not obligate itself to lend money on, or pay for, every Invoice.

Hana assumed the credit risk for Approved Accounts and agreed to advance Appellant money on those Accounts in its "sole discretion."  (*Id.* §§ 2.1(a)(1), 13.)

4

Hana also had discretion to purchase and make advances on Non-Approved Accounts. (*Id.* §§ 2.1(a)(1), 2.1(b), 13.) If Hana gave Appellant an advance on such an Account, the Account became an "Eligible Account." (*Id.* § 2.1(b).)

Hana advanced money on Appellant's BCBG Invoices, and it currently owns $1.8 million in unpaid Invoices for which it has filed a proof of claim. (*See* HANA Proof of Claim, Claim No. 01069.) The Invoices at issue here, in contrast, are approximately $1.7 million in Non-Approved, ineligible Accounts for which Hana did not advance Appellant any funds. (*See* D.E. 27, Exh. G; Thomas Decl., D.E. 30, Exh. A ¶¶ 5-8, Fleming Decl., D.E. 30, Exh. B, ¶¶ 6-17.)

On their face, Appellant's agreements with Hana presumptively assigned Hana all of Appellant's BCBG Invoices. The Factoring Agreement expressly agreed to sell and assign all BCBG Invoices to Hana. (*See* FA § 1.1.) Appellant sent Hana each Invoice with a pre-printed Hana Assignment form stating that Appellant "hereby sells, assigns, transfers and sets over" the attached invoices to Hana, "subject to the provisions of the Factoring Agreement." (*See* D.E. 27, Exh. H.) Each invoice included a pre-printed instruction that it should be paid only to Hana, as § 7.1 of the Factoring Agreement required. Hana then indicated whether Accounts were Approved through its E-Factoring System. (*See* FA § 1.2(a); Thomas Decl. ¶ 5.)

The Factoring Agreement gave Hana certain rights and duties with respect to Non-Approved Accounts. Hana had the right to lend up to $200,000 on Non-

Approved Accounts.  (*See* FA §§ 2.1(a)(ii), 2.1(c)(ix), 2.1(d).)  Hana also had duties to credit Appellant for any sums Hana received for Non-Approved Accounts and, subject to its discretion, to maintain certain reserves for them.  (*See* FA §§ 1.4, 6.7.)

However, as discussed above, the Factoring Agreement did not require Hana to pay for, or lend any amount on, Non-Approved Accounts, and Hana did not do so for the Invoices at issue here.  (*See* Thomas Decl. ¶¶ 3-8.) Hana also had no duty to collect Non-Approved Accounts or even to submit a claim if, as happened here, Appellant's customer became bankrupt.  (*See* FA § 1.5.)

Indeed, if the Factoring Agreement is read as the Bankruptcy Court read it, it required ***Appellant*** to pay Hana the full amount of Non-Approved invoices even if Hana provided no consideration for them. Hana did not assume the credit risk for Non-Approved Accounts; they were "full recourse" to Appellant. (FA § 1.3.) Yet if Hana owned all Non-Approved BCBG Invoices, and they were all "full recourse," then Appellant owed Hana the Invoices' full amount even when, as here, Hana did not advance any money or give any other consideration in exchange. The Factoring Agreement did not even limit the amount due to the amount Hana advanced, which might have been zero.  (*See id.* § 6.4(e).) Thus, if the Bankruptcy Court's reading of the Factoring Agreement is upheld, Appellant could owe Hana $1.7 million for the BCBG Invoices at issue even though Hana gave Appellant nothing for them.

More generally, the Factoring Agreement does not expressly address how

"ineligible" Accounts for which Hana did not advance funds should be treated. The distinction between Eligible Accounts and ineligible Accounts appears only in § 2.1. That section only states that Hana can make Non-Approved Accounts "Eligible" by making advances on them in its discretion (*see* FA §§ 2.1(a), 2.1(b)) and excludes certain Accounts from "Eligible" status.  (*See id.* § 2.1(c).) The Factoring Agreement does not otherwise distinguish between Eligible and ineligible Accounts.

Given the foregoing, the plain words of Appellant's factoring agreements could not assign the BCBG Invoices at issue to Hana. Hana had an express obligation to "purchase" the Invoices, and the agreements do not indicate that they effectuated a "purchase."  In the Factoring Agreement, Hana only agreed to purchase invoices in the future, and it retained discretion to refuse any advance or other consideration for a proffered Invoice. (*See* FA §§ 1.1, 1.3, 2.1.) The other two factoring agreements – the pre-printed Assignment forms and Invoices, both completed by Appellant – similarly do not promise consideration for Appellant's Invoices.  (D.E. 27, Exh. 8.) Consequently, only extrinsic evidence can show whether Hana purchased the Non-Approved Invoices at issue here. That evidence unambiguously shows that Hana did ***not*** purchase the Invoices.

2.  Appellant's and Hana's Course of Dealing

Appellant and Hana did business as follows:

Under Hana's and NYAM's factoring agreement, Hana had discretion whether to accept or reject each NYAM invoice for factoring.… Hana's

procedure … was to review each NYAM invoice and notify NYAM, typically within five days, whether it would accept or reject the invoice for factoring.  Hana provided notice of its decision as to which invoices it accepted for factoring, and which it rejected, through a computerized system to which NYAM had access.

When Hana rejected an invoice for factoring, that invoice was not assigned to Hana and Hana did not accept any ownership interest in the invoice.  Also, Hana did not factor those invoices and they were designated as "recourse," meaning that Hana assumed no obligation to attempt to collect them.… The invoices identified in the NYAM proof of claim are all invoices that Hana rejected for factoring.  Accordingly, Hana never took an ownership interest in those invoices, and BCBG (or its successor) owes them exclusively to NYAM, not to Hana.

(*See* Thomas Decl. ¶¶ 3-8; Fleming Decl. ¶¶ 3-8.)

Appellant's Mr. Fleming and Hana's Mr. Thomas have explained why each BCBG Invoice states that it is owned by and payable only to Hana as follows:

All of the NYAM invoices … contained an instruction that payment should be remitted to Hana rather than to NYAM.  This was done as a matter of convenience even when Hana had decided to reject the invoice for factoring.  If an invoice that Hana rejected for factoring was paid to Hana, Hana's practice was to credit the payment to [NYAM].

(Thomas Decl. ¶ 7; Fleming Decl. ¶ 7.)

3.  Mr. Fleming's Deposition Testimony

At his deposition, Appellant's Mr. Fleming testified that all of Appellant's BCBG Invoices were initially "assigned" to Hana and then "pushed back" and "reassigned" to Appellant if Hana rejected them for factoring. Mr. Fleming is not a lawyer, and he clarified his testimony in his Declaration. It states:

8

In reviewing my [deposition] testimony, I have realized that my terminology was not always precise.  In particular, I testified that all of NYAM's [BCBG Invoices] were initially "assigned" to Hana, but that some of the invoices were then "reassigned" to NYAM based on credit considerations.  My testimony was accurate as a practical business matter.  However, I have learned that lawyers' interpretation of the word "assignment" is somewhat different from the way I intended to use it at my deposition.  I would therefore like to clarify my testimony here.

When NYAM wanted to assign an invoice to Hana for factoring, it filled out a form entitled "Assignment" … which provided that NYAM "hereby sells, assigns, transfers and sets over to HANA FINANCIAL…the accounts receivable described in the attached copies of invoices…." However, this "Assignment" was actually only a ***request for*** and ***offer of*** assignment.  An actual assignment was only effectuated if Hana accepted the assignment and thereby agreed to lend NYAM money based on the invoice.  … Hana typically notified NYAM whether it had accepted the assignment within five days of receiving the "Assignment" form.

NYAM did not receive any loans, payments or anything else of value in exchange for filling out an "Assignment" form….NYAM only received value from Hana for a requested assignment, and only actually assigned ownership of and the right to collect the invoices attached to the "Assignment" form, once Hana accepted the assignment.  When Hana notified NYAM that it had rejected an invoice, the invoice, and the right to own and collect it, remained with NYAM.  Both NYAM and Hana typically referred to these invoices as "recourse."

I testified that NYAM's invoices were assigned to Hana and, if rejected, reassigned to NYAM, because, in practice, NYAM filled out "Assignment" forms and sent them to Hana. Also, the Factoring Agreement states that all invoices will be assigned to Hana, although it also specifies situations in which Hana can refuse the assignment.

On reflection, I would like to make sure that my testimony is clear:  The "Assignment" forms requested an assignment, but did not actually effectuate an assignment, because NYAM did not receive anything in return unless Hana actually accepted NYAM's assignment.

In other words, ownership of invoices did not transfer back and forth between NYAM and Hana when Hana rejected an invoice for factoring. My understanding is that ownership of an invoice only transferred to Hana

once it approved the invoice for factoring and agreed to lend NYAM money based on the invoice. As a business matter, it would make no sense to transfer ownership of the right to collect a valuable invoice without receiving cash, a loan, or something else of equivalent value in exchange.

Even though Hana sometimes loaned NYAM money based on "recourse" invoices, it did not take over ownership of or responsibility for collecting those invoices when it did so. When Hana loaned NYAM money based on "recourse" invoices, NYAM was responsible for repaying the loan whether or not the invoices were collected. In contrast, when Hana accepted an invoice for factoring, Hana was required to rely on the invoice to obtain repayment of its loan.

My review of the files indicates that Hana did not lend NYAM money based on the "recourse" invoices supporting NYAM's proof of claim.

(Fleming Decl. ¶¶ 9-17.)

4.   The Parties' Mutually Offsetting Debts

Appellee asserted a pre-petition claim against Appellant for $675,000. Appellant's cross-motion seeks a summary judgment that it is not required to pay this debt because it is entitled to set off Claim No. 01070 against it. Claim No. 1070 seeks $1,754,149.50 based on unpaid BCBG Invoices. (NYAM Proof of Claim, Claim No. 01070.)

5.   The Bankruptcy Court's Ruling

The Bankruptcy Court granted Appellee's motion for summary judgment and denied Appellant's cross motion. The Court ruled:

The written documents, which are comprised of the factoring agreement, the assignment, and the exemplar of the invoice that I have, even without regard to whether or not this particular invoice was actually received, there seems to be no dispute that the invoice contained the legend that is on this Exhibit H to Document 27-8.

10

The factoring agreement makes clear, both in the recital and in Section 1 and in numerous other sections that this was an arrangement whereby all invoices were going to be – were assigned to Hana.  Whether or not they were factored, whether or not they were advanced against, whether or not they were eligible was something that was contemplated to be determined after the fact.

The assignment is clear on its face that it's an assignment.  It's not an offer of an assignment.  There is no reservation of rights or indication that until five days passes this isn't really an assignment.  No documents have been offered that contradict the clear and unambiguous provisions of these documents.

In light of what I consider to be the black letter law that whe[n] documents are clear and unambiguous on their face, there is no need to resort to external, extraneous, additional materials such as the affidavits that have been proffered here, I'm going to grant summary judgement to BCBG and strike the set-off defense.

That conclusion is bolstered by the fact that the affidavits that were offered to create an ambiguity are themselves a contradiction of both the documents and the prior testimony.  And for that reason I'm not going to consider them, let alone credit them.  I believe that the documents are clear and unambiguous on its face.

So I'm going to grant summary judgement to BCBG and find that NYAM is liable to BCBG in the amount of $675,000, and NYAM's second affirmative defense of setoff is dismissed in its entirely.

(D.E. 40 at 53-54.)

The Bankruptcy Court did not expressly rule on three of Appellant's key arguments. The first argument was that Appellant's assignments of BCBG Invoices were not effective unless the assignments were accepted for factoring.  (*See id.* at 10, 14, 16-17, 19-20, 22-23, 26, 30, 39-40.) The second argument was that no assignment

of the Invoices at issue here could be valid because Appellant received no considera-

tion for them.  (*See id.* at 13, 22-24, 26, 30-31, 36, 46, 50.)

The third argument was that Appellant and Hana, as the only contracting

parties, were free to modify their written agreements if they chose to do so. The Court

implicitly rejected this argument by relying on the rule that oral testimony cannot be

introduced to modify "a document that clearly says X, Y, and Z."  (*Id.* at 45.) The

Court did not explain, however, why that rule should apply even when the

contracting parties do not disagree about how to interpret their agreements.

## <u>SUMMARY OF ARGUMENT</u>

The Bankruptcy Court erred by ruling on summary judgment that Appellant

had assigned the $1.7 million in BCBG Invoices at issue to its factor Hana – for no

consideration whatsoever – based on the plain words of the parties' contracts alone.

Appellant's Factoring Agreement contained ***mutual*** covenants:  "[Appellant]

hereby agrees to sell, assign and transfer to Hana, and ***Hana hereby agrees to***

***purchase***, all of Client's [Invoices]."  (FA § 1.1 (emphasis added).) Yet the Bank-

ruptcy Court ruled that Appellant had assigned the Invoices at issue without even

considering whether Hana had satisfied its obligation to "purchase" them. The

Factoring Agreement itself did not effectuate a purchase, because Hana retained

discretion not to accept the Invoices for factoring or provide any other consideration

for them.  Appellant's only other factoring agreements – the Assignment and Invoice

forms – similarly provided no consideration. Consequently, the Court should have examined extrinsic evidence – particularly the Declarations of Appellant and Hana – to determine whether Hana purchased the Invoices. Both Appellant and Hana agree:  Hana did not purchase the Invoices at issue, and they belong to Appellant.

The Bankruptcy Court erred by refusing to consider the Declarations. Hana's Declaration alone establishes that it did not purchase the Invoices at issue and did not own them. Yet, the Court disregarded Hana's Declaration in apparent reliance on the "parol evidence rule," even though, under governing California law, Hana's statements concerning its rejection of the Invoices for factoring, the parties' course of dealing, any post-Agreement modification of the parties' agreements by conduct – and any other facts that did not clearly "contradict" the agreements' terms – were admissible even if the factoring agreements were unambiguous.

Further, the "sham issue of fact" doctrine provided no ground for disregarding Hana's Declaration as a matter of law. Hana is not a party to this proceeding, its Declaration did not contradict its own prior statement or testimony, and the Bankruptcy Court failed to find the facts necessary to justify disregarding it as a "sham." The Court also improperly disregarded Appellant's Declaration.

At a minimum, Appellant and Hana were free to do business however they chose, whatever their agreements said. And it is black letter law that when, as here, both contracting parties agree concerning the meaning of their agreements, their

understanding controls. Thus, the Bankruptcy Court's substitution of its own under-

standing of the parties' agreements for the parties' understanding was clear error.

Even if the Bankruptcy Court had interpreted the factoring agreements

correctly, any assignment of the BCBG Invoices at issue to Hana would have been

void because, the undisputed facts show, Appellant received no consideration. The

Invoices therefore belong to Appellant. The Bankruptcy Court's Order should be

reversed, and summary judgment should be granted to Appellant.

## <u>ARGUMENT</u>

### **APPELLANT SHOULD BE GRANTED A SUMMARY JUDGMENT REVERSING THE COURT BELOW, AND DISMISSING THIS PROCEEDING, BECAUSE APPELLANT IS ENTITLED <u>TO SET OFF ITS BCBG INVOICES AGAINST ITS DEBT TO BCBG</u>**

Rule 56(a), Fed. R. Civ. P., provides that the court "shall grant summary judg-

ment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party bears the burden of showing that it is entitled to summary judgment.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to

weigh evidence but is instead required to view the evidence in the light most favor-

able to the party opposing summary judgment, to draw all reasonable inferences in

favor of that party, and to eschew credibility assessments." *Capital Records, LLC v.*

*ReDIGI, Inc.*, 934 F. Supp.2d 640, 647 (S.D.N.Y. 2013) (quoting *Amnesty Am. v.*

*Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)). Accordingly, "if there is

14

any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007).  Inferences and burdens of proof on cross-motions for summary judgment are the same as for a unilateral summary judgment motion.  *See Straube v. Fla. Union Free Sch. Dist.*, 801 F.Supp. 1164, 1174 (S.D.N.Y. 1992).

Here, the Bankruptcy Court should be reversed, and Appellant's cross-motion for summary judgment should be granted, because the undisputed facts show that Appellant owns the BCBG Invoices at issue and is entitled to execute a setoff.

## POINT I

### The Plain Words of Appellant's Factoring Agreements Did Not Effectuate an Assignment of Appellant's BCBG Invoices to Its Factor Hana

The plain words of Appellant's agreements with Hana did not effectuate an assignment of the BCBG Invoices at issue for a simple reason:  The Factoring Agreement required Hana to accept assignment of the BCBG Invoices at issue by purchasing them, and the agreements provide no evidence that Hana did so.

The Factoring Agreement contains ***mutual*** covenants:  "[Appellant] hereby agrees to sell, assign and transfer to Hana, and ***Hana hereby agrees to purchase***, all of Client's Accounts."  (FA § 1.1 (emphasis added).)  Nevertheless, the Bankruptcy Court ruled that the plain words of the Factoring Agreement, Assignment and Invoice forms sufficed – on their own – to effectuate an assignment of all of

15

Appellant's BCBG Invoices to Hana: "The assignment was clear on its face that it's an assignment. It's not an offer of assignment." (D.E. 40 at 53-54.)

The Court erred by considering only ***Appellant's*** promises, and not ***Hana's*** promises in response. The Factoring Agreement required Hana to "purchase" all of Appellant's BCBG Invoices. (FA § 1.1.) The word "purchase," according to the Merriam-Webster and American Heritage Dictionary web sites, means "to obtain" by "paying" (Merriam-Webster), or "in exchange for" (American Heritage), "money or its equivalent."

The Factoring Agreement gives no indication that Hana gave "money or its equivalent" for the BCBG Invoices at issue. The Factoring Agreement could only have done so by providing that Hana would actually pay for each Invoice. Instead, it says the opposite: Hana can pay nothing at all. The Agreement further provides that Hana will not extend credit on more than $200,000 in Non-Approved BCBG Invoices (*See* FA § 2.1(c)(ix)), though more than $1.7 million in Non-Approved Invoices are at issue here. The Assignment and Invoice forms similarly do not promise that Hana will pay Appellant for every Invoice.

Further, Appellant's and Hana's mutual covenants to sell and to buy created at most a "conditional sale" which was not "completed until the full purchase price [was] paid." *In re U.S. Express* is instructive:

> The contract also states: 'Seller agrees to sell and Buyer agrees to buy the aforementioned certificates. * * *' (Emphasis added.) This too

16

suggests a conditional sale. The courts have often stressed the phrases 'agrees to sell' and 'agrees to buy' when interpreting a contract as a conditional sale contract…The courts take these phrases to mean that the sale in question is executory, i.e., the sale will not be completed until the full purchase price is paid. Until the full price is paid, title, for the security purposes only, remains in the seller. The Referee, in his opinion, did not dispute that these phrases suggest an executory sale. He argued, however, that the sale was meant to be executory in the sense that it could not be completed until approved by the Public Utilities Commission. But even if this interpretation is correct it would not follow that the contract is not also executory because contingent upon full payment of the purchase price.

255 F.Supp. 584, 588 (N.D. Ca. 1966). *See also Fine v. Bradshaw*, 138 Cal. App.2d 863, 865 (3d Dist. 1956) (contract providing that purchaser "agrees to buy" and seller "agrees to sell" was a conditional sale such that title did not pass to the buyer).

The Bankruptcy Court's decision should be reversed:  the agreements that the Court relied on do not and cannot establish, "on [their] face," that Hana purchased the BCBG Invoices at issue. Hana's reservation of the right not to advance credit on BCBG Invoices, and the conditional nature of the parties' obligations, requires an examination of extrinsic evidence to determine whether Hana actually ***did*** purchase the Invoices at issue by accepting them for factoring. The evidence is unequivocal: Hana did not do so. (*See* Thomas Decl. ¶¶ 5-8; Fleming Decl. ¶¶ 6-17.)

## **POINT II**

Appellant's and Hana's Declarations Entitle Appellant
to a Summary Judgment that Appellant Owns the BCBG Invoices at Issue

Because Appellant's and Hana's agreements do not establish that Hana purchased the BCBG Invoices at issue, the Court must turn to extrinsic evidence.

This evidence is not necessary to interpret an ambiguity in the contract, because neither the word "purchase" nor the requirement to "purchase" are ambiguous. Rather, extrinsic evidence is essential to determine whether, as a matter of *fact*, Hana purchased the Invoices.

The evidence on that point is clear:  Appellant and Hana have both stated in Declarations under penalties of perjury – contrary to Hana's financial interest – that Hana did *not* purchase the Invoices at issue:

> The invoices identified in the NYAM proof of claim are all invoices that Hana rejected for factoring.  Accordingly, Hana never took an ownership interest in those invoices, and BCBG (or its successor) owes them exclusively to NYAM, not to Hana.

(Thomas Decl. ¶ 8; Fleming Decl. 8.)

This evidence is clear and dispositive:  Hana rejected the Invoices at issue, refused to lend money based on them, and therefore did not purchase them. Further, no contrary evidence was presented to the Court to show that Hana gave Appellant money or its equivalent to purchase the Invoices. Indeed, when the Bankruptcy Court asked Appellee at oral argument whether Appellant received consideration for the Invoices, Appellee's answer was "I do not know."  (D.E. 40 at 24.)

For the foregoing reasons, the undisputed facts establish that Hana did not purchase the Invoices at issue and does not own them. Appellant *does* own them, and is therefore entitled to a summary judgment that it can set the Invoices off against its much smaller unpaid debt to BCBG.  *See, e.g., Britz Fertilizers, Inc. v. Bayer Corp.*,

18

665 F. Supp. 2d 1142, 1159 (E.D. Cal. 2009) (granting partial summary judgment and stating that, "'[u]nder California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved.'") (quoting *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986)); *Harrison v. Adams*, 20 Cal.2d 646 (1942) (mutual debtors can offset their debts); 11 U.S.C. § 553 (preserving state law rights of setoff). In addition, because Appellant does not owe Appellee any further payment, this proceeding should be dismissed.

## POINT III

### The Bankruptcy Court Should Not Have Disregarded the Declarations of Appellant and Hana, which This Court Can and Should Properly Rely On

The Bankruptcy Court should not have disregarded the Declarations of Hana's Mr. Thomas and Appellant's Fleming. The Court ruled that those Declarations are:

> a contradiction of both the documents and the prior testimony. And for that reason I'm not going to consider them, let alone credit them. I believe that the documents are clear and unambiguous on [their] face.

(D.E. 40 at 54.)

The Bankruptcy Court's ruling, because it is based on the factoring agreements' "clear and unambiguous" terms, appears to rely on the "parol evidence rule." California's parol evidence rule, which Appellant assumes to govern for purposes of this appeal (*see* FA § 12), bars the use of evidence outside of a contract to "contradict" the contract's terms. *See, e.g.*, *Kanno v. Marwit Capital Partners II*, 18 Cal.App.5th 987 (2017); Cal. Code Civ. P. 1856, *et seq*.

The Bankruptcy Court's ruling should be reversed for three main reasons. First, the parol evidence rule does not bar reliance on the Thomas and Fleming Declarations because, as shown in Point I, they do ***not*** contradict the factoring agreements' terms. The agreements do not unambiguously state that Hana purchased the Invoices at issue or contain any other relevant provision which the Declarations contradict. Consequently, the parol evidence rule is not a proper ground for the Bankruptcy Court, or this Court, to disregard them.

Second, the Declarations cannot be excluded from consideration because they discuss the declarant's actions ***after*** the agreements were entered into, which by definition cannot "contradict" the agreements. For example, the Declarations describe Appellant's and Hana's ***conduct*** in doing business under the agreements, including Hana's process for determining whether to factor an invoice, Hana's rejection of the Invoices at issue for factoring, and Hana's belief, as a result of its rejection, that it did not obtain an ownership interest in the Invoices. (*See*, *e.g.*, Thomas Decl. ¶¶ 4-8.) These facts as stated in Mr. Thomas's Declaration suffice to establish that Hana did not provide Appellant with money or its equivalent for the BCBG Invoices at issue, and thus did not "purchase" those Invoices as the Factoring Agreement required. Mr. Thomas's statements also do not "contradict" the terms of the parties' agreements, and therefore cannot be excluded from evidence based on the parol evidence rule. The rule simply does not apply. *See also* Cal. Code Civ. P.

1856 ("Terms set forth in a writing … may be explained or supplemented by course of dealing ... or by course of performance").

Third, although the Bankruptcy Court did not expressly rule that the Thomas and Fleming Declarations should be disregarded as "shams," the Court indicated an inclination to rule that way based on the Court's view that the Declarations contradict "both the documents and the prior testimony."  (D.E. 40 at 54.) Disregarding the Declarations as "shams," however, would be contrary to both the facts and the law.

In the Second Circuit, the "sham issue of fact" doctrine "prohibits a *party* from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony." *Moll v. Telesector Resources Group*, 760 F.3d 198, 205 (2d Cir. 2014) (original emphasis).) The doctrine extends to third party witnesses, such as hired experts, only when the witness has a "close relationship" to a party and the testimony was submitted to "manufactur[e] a factual dispute" by contradictions which are, "'unequivocal and inescapable,' and 'unexplained.'" *Id.* (quoting *In re Fosamax Prods.*, 707 F.3d 189, 194 (2d Cir. 2013).) Moreover, "the 'sham issue of fact' doctrine does not mandate that the court disregard a non-party witness's subsequent testimony when it conflicts with the non-party witness's prior statement," *Moll*, 760 F.3d at 201, let alone when, as here, there is no such conflict.

Mr. Thomas is Hana's First Senior Vice President and Customer Credit Manager.  (Thomas Decl. ¶ 1.)  Neither he nor Hana are parties in this proceeding,

and neither was deposed or served with a document request. (*See* D.E. 40 at 42.)
Given these facts, Mr. Thomas's Declaration plainly cannot contradict his own prior
testimony, because there was no such testimony. His Declaration also does not
contradict the factoring agreements for the reasons discussed above. Consequently,
the "sham issue of fact" doctrine does not apply to his Declaration. *See Crawford v.
Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) ("sham" doctrine does
not apply when the prior, allegedly inconsistent testimony was given by someone
else); *In re World Trade Ctr. Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014)
("[P]laintiffs may not create material issues of fact by submitting affidavits that
dispute their own prior testimony. The principle does not apply, however, if the
statements 'are not actually contradictory,' or 'the later sworn assertion addresses an
issue that . . . was not thoroughly or clearly[] explored . . . .'" (citation omitted)).

   In any event, because the Bankruptcy Court did not make findings of fact
sufficient to establish that Appellant was able to influence Mr. Thomas's testimony,
identify any "unequivocal and inescapable" contradictions in his Declaration, or
determine that any such contradictions were "unexplained," the Court's refusal to
consider Mr. Thomas's Declaration, if based on the "sham" doctrine, was clear error.
Further, to the extent that the Court distrusted the Declaration merely because it
paralleled Mr. Fleming's, that is easily explained:  They were both telling the truth.

   There are also no grounds for excluding Mr. Fleming's Declaration as a

"sham," particularly on summary judgment.  Mr. Fleming's Declaration explains, as discussed above in the Statement of the Case, that he did not use terms like "assigned" in their legal sense when he was deposed, but in a businessman's sense – he provided BCBG Invoices to Hana with an Assignment form, so he "assigned" them, and Hana became their owner. Mr. Fleming is not a lawyer, and his use of more precise terminology in his Declaration – which takes concepts like "consideration" into account – does not make him a liar.

Moreover, and crucially, nothing in Mr. Fleming's prior testimony establishes that his account of the *facts* is incorrect. There is no statement in Mr. Fleming's prior testimony or anywhere else that Hana purchased the Invoices at issue by factoring them, paying for them, or providing a monetary equivalent. The 8-page table Appellee submitted to the Bankruptcy Court to demonstrate Mr. Fleming's purported self-contradictions identifies only three, and they all are a matter of legal terminology: (1) Mr. Fleming initially failed to distinguish between "factoring" and "offering for factoring"; (2) he initially failed to distinguish between "assigning" and "offering for assignment," and (3) he was not consistent in stating when an invoice offered for assignment became "owned" by the assignee.  (D.E. 33, Exh. A.)

In any event, this Court has no need to rely on Mr. Fleming's Declaration in deciding this matter, because Mr. Thomas's Declaration suffices to establish that Hana did not purchase, and therefore does not own, the BCBG Invoices at issue.

Appellant's cross-motion for summary judgment should be granted.

## POINT IV

### Even If the Unambiguous Words of the Factoring Agreements Had Effectuated an Assignment – and They Did Not – The Contracting Parties Were Free to Modify Their Agreement and Conduct Their Business as They Chose

Even if the factoring agreements had provided unambiguously that Hana purchased the Invoices at issue – and they do not – California law requires consideration of the contracting parties' conduct in interpreting their contract, and the parties were free to modify their agreement and conduct their business as they chose.

This is not the usual situation in which one contracting party attempts to bind another contracting party to the written terms that they had both agreed upon. Here, an outsider is trying to bind ***both*** contracting parties to written terms that the ***outsider wishes*** the contracting parties had agreed upon. The Bankruptcy Court erred by treating this case as if it were the former situation instead of the latter.

California contract law recognizes that contracting parties' conduct is admissible to explain the terms of their contract even when the parties' interpretations of the contract do not agree. California's parol evidence rule, embodied in California Civil Code § 1856, provides: "Terms set forth in a writing … may be explained or supplemented by course of dealing or usage of trade or by course of performance." Indeed, as this Court recognized in reversing an earlier Bankruptcy Court decision, "a court applying California contract law may also consider extrinsic evidence

24

regarding contract interpretation, ***even if it does not find the language of the contract to be ambiguous***." *In re Calpine*, 406 B.R. 463, 472 (S.D.N.Y. 2009) (emphasis added). *See also Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001) ("California has a liberal parol evidence rule:  It permits consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous.")

Further, "California contract law recognizes the principle of implied modification by conduct." *G.P.P., Inc. v. Guardian Protection Prods.*, 2017 WL 1881385 (E.D. Cal. 2017) (quoting *Gen. Elec. Capital Corp. v. MSI Modular Sys.*, 2015 WL 11438597, at *2 (C.D. Cal. Aug. 17, 2015)); *see Matanuska Valley Farmers Coop Ass'n v. Monaghan*, 188 F.2d 906, 909 (9th Cir. 1951) (the parties' conduct "must be deemed to have modified the written contract by mutual agreement").

More generally, the California courts have held, "[n]ot only is course of performance relevant in ascertaining the meaning of the parties' agreement, it may supplement or qualify the terms of the agreement, or show a waiver or modification of any term inconsistent with the course of performance." *Id.* (quoting *Emp'rs Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 920-21 (2008)). This is true even when, as here, "the written agreement includes a clause expressly prohibiting modification." *Alvarado Orthopedic Research, L.P. v. Linvatec Corp.*, 2013 WL 2351814, at *4 (S.D. Cal. May 24, 2013) (citing *Wagner v. Glendale Adventist Med.*

*Center*, 216 Cal. App. 3d 1379, 1388 (1989)).

Given California's rules of contract interpretation, the Bankruptcy Court erred by refusing to consider evidence concerning Appellant's and Hana's conduct under their agreements even if those agreements could be read, clearly and unambiguously, to effectuate an assignment of all BCBG Invoices to Hana. This Court should therefore reverse the Bankruptcy Court and, based on the evidence in the Thomas and Fleming Declarations, hold that the Invoices at issue belong to Appellant. The relevant facts, as shown above, are undisputed: Hana did not purchase the $1.7 million in Invoices at issue, even though Appellant provided them to Hana with Assignment forms, because Hana rejected those Invoices for factoring and gave Appellant nothing for them in return. Mr. Fleming's lack of clarity regarding terminology at his deposition does nothing to change those facts.

In any event, when both contracting parties agree concerning the meaning of their contract, as in the "rare instance" presented here, their shared understanding is controlling. The Restatement (Second) of Contracts states this principle as black letter law: "Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning." *Id.* § 201(1). Further, in interpreting a contract, "the primary search is for a common meaning of the parties, not a meaning imposed on them by the law." *Id.,* Cmt. c. *See also* 2 Farnsworth on Contracts (3d) § 7.9 ("[A]uthority … supports giving effect to

26

a common meaning shared by both parties in preference to an objective meaning"

imposed by the courts).

The Bankruptcy Court has also recognized this principle:

In "rare" instances, however, where "both parties in a contract dispute have a contemporaneous understanding that, although unexpressed, is harmonious, that understanding may inform the meaning of an ambiguous contract." *Id.; accord Baladevon, Inc. v. Abbott Labs., Inc.,* 871 F. Supp. 89, 98-99 (D. Mass. 1994) … ("[T]he Court concludes that the undisputed evidence as to both the contracting parties' subjective intent controls the interpretation of the ambiguous contract terms."); RESTATEMENT (SECOND) OF CONTRACTS § 201(1) ("Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning."); E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 7.9 (3d ed. 2004) (where parties share a common meaning, prevailing view is that their subjective understanding controls).

*In re Old Carco LLC*, 551 B.R. 124, 129 (2016). *See also Tri-Star Electronics Intern. v. Preci-Dip Durtal*, 619 F.3d 1364 (Fed. Cir. 2010) (contracting parties' shared understanding of assignment was controlling despite the written terms); *Ahmad v. Furlong*, 435 F.3d 1196, 1203 (10th Cir. 2006) (recognizing the impropriety of "a court's resolving a contractual ambiguity contrary to the intent of both contracting parties."); *James v. Zurich-Am. Ins. Co. of Ill.*, 203 F.3d 250, 255 (3d Cir. 2000) ("[T]he consistent practical construction given to that provision by the parties to the contract controls its terms.").

As the foregoing authorities establish, Appellant's and Hana's shared inter-

pretation of their agreements is controlling, even if the agreements' terms are

unambiguous and the Court is inclined to adopt a different interpretation. Appellant

and Hana agree:  The Factoring Agreement, Assignment and Invoice forms did not

effectuate an assignment of the BCBG Invoices at issue to Hana. Hana "never took

an ownership interest" in them. (Thomas Decl. ¶ 8.) The undisputed facts

demonstrate, therefore, that the Invoices belong to Appellant.

### POINT V

Hana Does Not Own the $1.7 Million in Invoices at Issue
Here Because Hana Gave Appellant No Consideration for Them

The undisputed facts show that Hana did not give Appellant anything in ex-

change for the BCBG Invoices at issue here. The factoring agreements do not require

any payment for Non-Approved invoices, especially if they exceed $200,000; Hana

"rejected" the Invoices at issue; and Appellant "did not receive anything in return"

for them. (*See* FA § 2.1(c)(ix); Thomas Decl. ¶ 8; Fleming Decl. ¶¶ 8, 11-12, 14.)

Even Appellee's counsel admitted that she "d[id] not know" if Appellant

received consideration for the Invoices at issue.  (D.E. 40 at 24.)  However, she did

offer the Bankruptcy Court two arguments:  That "the factoring arrangement as a

whole" provided consideration, and that no consideration was necessary under

California law.  (D.E. 40 at 25.)  Both arguments are incorrect.

California law is clear:  A contractual assignment, like any other contract,

requires consideration.  *See*, *e.g.*, *Swift Harvest USA, LLC v. Dollar General Corp.*,

2018 WL 7348845 (C.D. Ca. 2018) (holding that certain assignments were invalid

under California law for lack of consideration); *Embassy Realty Assoc. v. Southwest Prods. Co.*, 126 Cal. App.2d 725 (1954) (same).

There are, however, two recognized exceptions to the rule that assignments require consideration – gifts, and "assignments for collection" which transfer legal but not beneficial title or the right of setoff.  *See, e.g., Harrison v. Adams*, 20 Cal.2d 646 (1942). However, as the parties' agreements and Declarations make clear, Appellant did not intend to give Hana $1.7 million in invoices as a gift, and Appellee admits that the assignments here are not just for collection.  (*See* D.E. 31 at 11-12.) Consequently, the exceptions do not apply, and consideration was required.

Further, the only case that Appellee cited to support its arguments is *Amalgamated Transit Union v. Superior Court*, 46 Cal.4th 993 (2009).  (*See* D.E. 40 at 24-25). *Amalgamated* is inapposite because it concerns a gift – a gratuitous assignment of a right to sue – and its only relevant holding is that the assignment there was barred by statute. In addition, although *Amalgamated* states in dictum that "assignments need not be supported by any consideration," it does so based on two examples:  *National R. Co. v. Metropolitan T. Co.,* 17 Cal.2d 827, 831 (1941), which concerns an assignment for collection, and Restatement (Second) of the Law of Contracts § 332, which concerns "Revocability of Gratuitous Assignments."

Appellee's argument that the "factoring arrangement as a whole" provided consideration is equally without merit. The plain words of the Factoring Agreement

do not state that Appellant will assign its valuable Invoices for free; they state that Hana will purchase the Invoices. Also, the Declarations make clear the parties' intention that Hana would pay for each invoice.

Moreover, the Factoring Agreement merely promises to assign Invoices in the future. Any assignment of the Invoices at issue could only have been effectuated, therefore, by the Assignment forms. Yet, the Declarations show that Appellant received nothing in exchange for its Assignment forms, and because the Factoring Agreement had already been entered into, it was, at most, past consideration and insufficient to support a new assignment.

Accordingly, Appellant did not assign the $1.7 million in Invoices at issue to Hana because it received no consideration in exchange. Even if the Agreements were read to effectuate an assignment, therefore, the assignment would be void. The undisputed facts therefore show that the Invoices at issue belong to Appellant, not Hana, and that Appellant should be allowed to set them off. The Bankruptcy Court's Order should be reversed, and Appellant's cross-motion should be granted.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Order of the Bankruptcy Court below, grant Appellant's Cross-Motion, dismiss this proceeding, and grant such other and further relief as is just and proper.

Dated:  New York, New York
        May 30, 2019

                                      GRIFFIN HAMERSKY LLP

                                      By: /s/ Michael D. Hamersky
                                      Michael D. Hamersky
                                      Scott A. Griffin
                                      Richard K. Milin
                                      420 Lexington Ave, Suite 400
                                      New York, New York 10170
                                      Telephone: (646) 998-5580
                                      Facsimile: (646) 998-
                                      5574rmilin@grifflegal.com
                                      mhamersky@grifflegal.com

                                      *Counsel for Appellant, NYAM, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 8015(a)(7) of the Federal Rules of Bankruptcy Procedure, the undersigned counsel hereby certifies that as measured by the word-processing system used to prepare this brief, there are 7,715 words in the Appellant's Brief.

Dated:  New York, New York
        May 30, 2019                    GRIFFIN HAMERSKY LLP

                                        By: /s/ Michael D. Hamersky
                                        Michael D. Hamersky
                                        Scott A. Griffin
                                        Richard K. Milin
                                        420 Lexington Ave, Suite 400
                                        New York, New York 10170
                                        Telephone: (646) 998-5580
                                        Facsimile: (646) 998-
                                        5574rmilin@grifflegal.com
                                        mhamersky@grifflegal.com

                                        *Counsel for Appellant, NYAM, LLC*

32